**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

**THE HON. GEORGE H. WU, JUDGE PRESIDING**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| **vs.** | ) **NO. CR 09-825; 09-826-GW** |
| **EDGARDO PRADO CASTANEDA,** | ) |
| **Defendant.** | ) |

**REPORTER'S TRANSCRIPT ON APPEAL**

**THURSDAY, SEPTEMBER 2, 2010; 8:26 A.M.**

**Wil S. Wilcox, CSR 9178**
**Official Federal Reporter**
**312 North Spring Street**
**Suite 430**
**Los Angeles, California 90012**
**Phone:(213) 290-2849**
**Email: wil.s.wilcox@gmail.com**

**APPEARANCES:**

**FOR THE PLAINTIFF:** **ANDRÉ BIROTTE JR.**
**UNITED STATES ATTORNEY**
**BY: JUSTIN R. RHOADES**
**ASSISTANT UNITED STATES ATTORNEY**
**1400 United States Courthouse**
**312 N. Spring Street, 12th Floor**
**Los Angeles, California 90012**

**FOR THE DEFENDANT:** **GILBERT P CARREON LAW OFFICES**
**By: GILBERT PAUL CARREON**
**ATTORNEY AT LAW**
**321 East Second Street**
**Suite 206**
**Santa Ana, California 92703**

**LOS ANGELES, CA.; THURSDAY, SEPTEMBER 2, 2010; 8:26 A.M.**

**-oOo-**

THE COURT: Let me call the matter of the United States versus Castaneda.

MR. RHOADES: Good morning, Your Honor. Justin Rhoades on behalf of the United States.

THE COURT: All right.

MR. CARREON: Good morning, Your Honor. Gilbert Carreon appearing on behalf of Mr. Castaneda who is present.

THE COURT: All right. We are here for sentencing. Let me summarize the situation in this case, and then I will allow both counsel and the defendant to speak.

The defendant is facing two different criminal cases. There is case number CR-09-0825 and CR-09-0826, and as to the case 825 that's currently scheduled for trial on September the 14th. However, he did enter a plea insofar as the case ending in 826, and in the plea agreement in that case the defendant pled to two counts of the Indictment charging him with a violation of 21 USC Section 841(a)(1) and (b)(1)(A)(viii), which is the distribution of methamphetamine. The amount pled to was indicated in the plea agreement as being at least 50 grams.

The base offense level in the plea agreement was set at 32 under Section 2D1.1C4. Also, there was an

indicated mandatory minimum sentence of 10 years for those particular counts.

The presentence report sets the same offense level base at 32, adds two points for leadership role under 3B1.1C and then subtracts three levels for acceptance of responsibility under 3E1.1B for a total of 31 insofar as the offense level is concerned.

Insofar as the defendant's criminal history, he has zero convictions. Although, he has arrests which did not lead to convictions, but because there are no convictions his criminal history category is indicated as 1.

In terms of the defendant's background, he is 26 years old approximately, single but with a long-time girlfriend, one child, a son approximately five years old. The girlfriend at this point in time has certain medical problems and is receiving treatment.

The defendant is close to his parents and has several siblings. He dropped out of high school in his senior year. He eventually started his own landscaping business in approximately 2002. The defendant is a legal permanent resident and therefore may be deported as a result of this conviction.

The probation office recommendation notes that the guideline sentencing range at 31 at category 1 criminal history would be between 108 to 135 months, but the

probation office letter says that it is between 120 to 135 months. Presumably, the reason why it says that is that there is a mandatory minimum of 120 months here and that is the recommendation of the probation office. The probation office also recommends five years of supervised release.

The government's initial brief follows the recommendation in terms of the sentencing, and the defendant's brief argues that the plus two points for leadership role is unwarranted because at the meeting that was conducted in regards to the methamphetamine the defendant and the codefendant jointly delivered the methamphetamine to the confidential informant. Although, the defendant received the money in exchange for that.

The defendant asks for a sentence of 87 months, basically calculating it as a level 29 offense and at category 1. The defendant also has provided letters from family and friends.

The government has supplied a supplemental brief indicating that there is an ATM report which references a situation where the defendant allegedly told a confidential informant that he is part of the La Familia Mexican Mafia and described other criminal plans which included kidnapping.

Let me ask. Have I summarized the situation correctly?

MR. RHOADES: Yes, Your Honor.

MR. CARREON: Yes, Your Honor.

THE COURT: Okay. Let me ask. Is there anything that is contained in the materials from the probation office that either side thinks is erroneous or should be charged or modified?

MR. RHOADES: Not from the government, Your Honor.

MR. CARREON: Yes. On behalf of the defendant, we are disputing the leadership role.

THE COURT: I understand that. I've indicated that. But aside from that, anything else?

MR. CARREON: Aside from that, no.

THE COURT: All right. And let me ask the defendant.

Sir, have you had an opportunity to read the materials from the probation office?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: Did you discuss those with your counsel?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: Is there anything that you think is contained in the reports that you think is either wrong or should be modified or changed in any way other than the contention in regards to your leadership role in regards to the crime?

THE DEFENDANT: Thanks for asking, Your Honor.

Actually, I sent a letter, and I didn't submit it as a motion. I sent a letter explaining basically what we discussed with the probation officer. I don't know if you received that one.

THE COURT: Okay. You sent the letter to the probation officer?

THE DEFENDANT: Actually, to the Court and to the probation officer. I don't know if you received that one.

THE COURT: Let me ask. For some reason I do not have a copy of the letter.

THE DEFENDANT: Actually, if you don't mind, my girlfriend, she might have a copy of the letter if you need it.

THE COURT: Okay. Do you know whether or not this was a letter that was sent to me or was it something that was actually filed?

THE DEFENDANT: Actually, it was. It should be filed, but actually I sent it directly to the Court and to the probation officer. I sent two copies.

THE COURT: Let me do this. Let me ask Javier. I didn't see a letter. Check and see if we have a copy.

Let me ask the government. Did the government receive a copy of the letter?

*(Counsel conferred.)*

MR. RHOADES: I did, Your Honor. There is an April 15th packet that went to the probation office and a June 2nd packet that went to the probation office, both of which have the letter from the defendant.

I was just inquiring with Mr. Carreon whether that packet was also filed with the Court. I don't know.

THE COURT: Okay. It's not on my docket which means I didn't get a copy of it. But let me do this. I will take a look at the letter now. Although, it may turn out to be moot because the issue here is in light of the mandatory minimum.

Let me ask the defense counsel. I understand your argument. I understand there is an issue as to whether or not he did have a leadership role or not. But even if I were to accept the fact that he did not have a leadership role, there is still a mandatory minimum requirement in this particular situation. I don't see him getting around that mandatory minimum in this context. So let me ask. I will allow you to make the argument at this point in time, but let me just finalize with the defendant.

Aside from that issue in regards to the leadership role, is there anything else that you think is either wrong or should be changed vis-a-vis the material from the probation office?

MR. CARREON: Just that the defendant is disputing

the comment attributed to him to the confidential informant that he was involved with this street organization.

THE COURT: All right. But that wasn't contained in the probation office materials that were provided from the government.

MR. CARREON: That's correct.

THE COURT: I understand that would be his position. All right.

Let me ask the counsel. I will allow you to make an argument at this point in time.

Let me indicate in terms of my tentative is that I would go along with the mandatory minimum. It's required under the law. So unless he establishes a basis to avoid the mandatory minimum, it's pretty much the least I can sentence him to in this situation.

MR. CARREON: I understand that, Your Honor.

THE COURT: Let me ask the government. Is there any argument that you wish to make that you haven't already made?

MR. RHOADES: No, Your Honor. The government would submit.

THE COURT: All right. Let me ask the defense counsel. Is there any other argument that you wish to make that you have not already made?

MR. CARREON: No, Your Honor.

THE COURT: Let me ask defendant.

Sir, is there anything you wish to say to the Court before the Court sentences you?

THE DEFENDANT: Actually, I would like to thank the government. I didn't realize --

THE COURT: Sorry. Please speak into the microphone. I apologize.

THE DEFENDANT: Actually, I want to thank you for your time and I want to thank the government for all the effort and the hard work that they did on my case.

Even though it was the first time that I basically was doing what I was doing, it doesn't matter for the reasons. But when I was in San Bernardino I took a couple of classes about the drug program and stuff like that and I understand how the drug affects basically the people and how it affects you trying to get money and stuff like that and I understand the big mistake that I made. So I just want to apologize. This has been helping me to get a lot of experience in life. Not only I'm going to be getting incarcerated and punished, but my 5-year-old kid and my wife.

I know I have a minimum mandatory. I just wish you can do something for my sentence and give me another chance if it's possible. But again, I understand what I did and I have to pay for it. So it's in your hands.

THE COURT: All right. Let me indicate to defendant, there is nothing I can do. There are one or two ways to get around the mandatory minimum. The problem is that to get around the mandatory minimum certain factors have to be met, and in your case they have not been met.

There is the so-called safety valve and things of that sort, but I've not seen any evidence that those requirements have been filled.

Let me ask the government.

MR. RHOADES: Your Honor, the defendant did come in for a proffer. If we were going to go down the safety valve route, the government would challenge some of the veracity of some of the statements. The fact that he is a leader I think also excludes him, and the fact that it was clear that he had lots and lots of firearms. We would argue that the possession of firearms prong would also not be met.

THE COURT: All right. I understand that, but let me also ask. It's my understanding that upon the entry of sentence in this particular case the government is going to make a decision as to whether or not to proceed as to the case ending in 825; is that correct?

MR. RHOADES: That's correct, Your Honor.

THE COURT: Okay. Is the government prepared at this point in time to deal with that?

MR. RHOADES: Yes, Your Honor.

THE COURT: All right. Let me ask. Is there anything else that anybody wants to say to the Court, anything else anybody wants to say to the Court before the Court sentences?

MR. CARREON: No, Your Honor.

THE COURT: Sir.

THE DEFENDANT: If I get the mandatory minimum, actually again it's up to you. I tried to do as much as I can to qualify for the safety valve. When I went and sat down with the government and with everybody, I just did my part. I don't know if I can get it. I don't know how that works.

THE COURT: Okay. But the problem is, is that there are certain elements that have to be met in order to qualify for the safety valve, and the government is indicating that you are not eligible.

THE DEFENDANT: Okay.

THE COURT: At this point in time it seems to me that the government is correct in that regard. Therefore, you are not eligible for the safety valve.

So at the present time I would have to sentence you to the maximum -- sorry, not the maximum, to the mandatory minimum sentence.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: Let me also ask one other question. I

didn't see any indication that the defendant himself has utilized drugs or has been addicted, et cetera, et cetera; is that correct?

MR. RHOADES: Not to my knowledge, Your Honor. I don't know more than that.

THE COURT: All right. Let me ask the defense counsel. Is that the defense position as well?

MR. CARREON: Yes, Your Honor.

THE COURT: Okay. All right. I will sentence as follows then.

I have read the materials that are contained in the file and have been submitted to me by the parties, and I've considered the factors under 18 USC Section 3553(a), and I will sentence the defendant as follows:

I will sentence the defendant to the mandatory minimum of 120 months which is the 10-year mandatory minimum, and that would be as to both counts -- wait a second, as to the single Count 2. I will also place the defendant on supervised release upon his release from custody, and that supervised release will be for a period of five years under the following terms and conditions:

First, the defendant will comply with the rules and regulations of the U.S. Probation Office and also General Order 05-02. The defendant shall cooperate in the collection of a DNA sample from himself. The defendant will

pay a special assessment of $100. The Court finds that he does not have any financial capability of paying any further fines, so those further fines are waived.

The defendant is ordered not to commit any violation of any state, local or federal law or ordinance. Also, the defendant shall comply with the immigration rules and regulations of this country, and if he winds up being deported either voluntarily or involuntarily, he is not to reenter the United States illegally.

If the defendant is removed or deported, he is not required to report to the probation office while residing outside of the United States. However, during the period of supervised release if he finds himself back within this country for whatever reason, he must report to the nearest probation office within 72 hours of his return to the United States.

The defendant is also ordered not to obtain or possess any driver's license, Social Security Number, birth certificate, passport or any other form of identification other than in his own true and correct name.

The Court does not require drug testing in this situation because there is no indication of risk as to this defendant.

Let me ask. Is the defendant going to make a request to be housed in the Southern California area?

MR. CARREON: Yes, Your Honor.

THE COURT: Okay. Let me indicate to the defendant, I can't order the Bureau of Prisons to house you in any particular location, but I will make a recommendation that you be so housed in the Southern California area because you have family members here.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: Now let me ask. Does the government move to dismiss the remaining counts of the indictment?

MR. RHOADES: Yes, Your Honor. The government moves to dismiss Count 1 of the Indictment as well as the entire Indictment in CR 09-825-GW, which is United States versus Edgar Prado Castaneda, et al.

THE COURT: All right. The Court will dismiss Count 1 in the indictment in Case Number CR-09-0826.

And as to the case CR-09-0825, let me ask. Are there any other defendants in that case other than this defendant?

MR. RHOADES: There were two other defendants, Your Honor, and they have both pled out and been sentenced at this point in time.

THE COURT: Okay. In that case I will dismiss the Indictment in that case number, the case ending in 825 as to this defendant at this point in time.

Let me indicate to Mr. Castaneda. You have in

your plea agreement waived your rights to appeal on those limits because that's described in the plea agreement. That wavier is still applicable at this point in time.

However, if you feel that there is a basis for your filing a notice of appeal, in order to file a notice of appeal you have to do so in writing with the clerk of this court within 10 days of the entry of judgment in this case.

If you cannot afford to pay for the filing fee or the cost of the transcript of these proceedings, you can make a request to the clerk of the court to waive those fees for you. And if the clerk of the court finds that you are financially incapable of paying those fees, those fees will be waived.

Also, if you do not have an attorney to represent you for purposes of filing a notice of appeal, you can make a request to the clerk of the court to file that notice of appeal for you. If you wish the clerk of the court to do that for you, you have to file with the clerk of the court within the next 10 days in writing a request that the clerk of the court do so.

Let me ask. Have you discussed your remaining rights of appeal with your counsel?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about those at this point?

THE DEFENDANT: A personal question if you don't mind.

THE COURT: All right.

THE DEFENDANT: I know that you just told me that there is not a lot of ways to get around the mandatory minimum.

THE COURT: Yes.

MR. CARREON: Do you think the appeal will help?

THE COURT: That's something I can't advise you on. I've made the decision that there doesn't appear to be a way around the mandatory minimum. However, I might very well be wrong, and if I am that would be a basis for an appeal.

THE DEFENDANT: All right.

THE COURT: But whether or not you should do so, I cannot tell you because again I can't give you legal advice. You'd probably have to ask your attorney for that.

THE DEFENDANT: I understand.

THE COURT: All right. Anything else?

MR. RHOADES: Nothing, Your Honor.

THE COURT: All right, anything else?

MR. CARREON: Nothing, Your Honor.

THE COURT: All right. Thank you very much.

(At 8:43 a.m. proceedings were adjourned.)

--oOo--

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: February 4, 2011

______________________________

WIL S. WILCOX
U.S. COURT REPORTER
CSR NO. 9178