ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
JUSTIN R. RHOADES (Cal. Bar No. 230463)
Assistant United States Attorneys
Violent & Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-5339
    Facsimile:  (213) 894-3713
    E-mail:     shawn.nelson@usdoj.gov
                Justin.rhoades@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 09-00826-GW |
|---|---|
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING POSITION FOLLOWING REMAND; EXHIBIT |
| v. | |
| EDGARDO PRADO CASTANEDA, | Re-Sentencing Date: June 28, 2012 |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby responds to defendant Edgardo Prado Castaneda's Sentencing Position Following Remand.

///

///

This response is based upon the attached memorandum of points and authorities, exhibit, the parties' previous sentencing positions, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 18, 2012            Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


         /s/
JUSTIN R. RHOADES
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Edgardo Prado Castaneda ("defendant") has filed a Sentencing Position Following Remand, arguing that upon his re-sentencing, this Court should find him eligible for the "safety valve" pursuant to 18 U.S.C. § 3553(f) and USSG § 5C1.2. Defendant argues that he was not a "leader or organizer" and that he did not possess firearms in conjunction with the offense. Defendant also makes arguments pursuant to 18 U.S.C. § 3553(a) regarding the sentence the Court should impose. Defendant argues that, because he is safety valve eligible, the court should sentence him below the otherwise-applicable mandatory minimum sentence of 120 months of imprisonment. The government maintains that defendant is not eligible for the safety valve because: (1) he was a "leader, organizer, manager, or supervisor" of the offense; and (2) he possessed firearms in connection with the offense. As a result, the government respectfully recommends that the Court impose its prior sentence of 120 months.

**II.   ARGUMENT**

The government submits that defendant has met the three of the five elements required to be eligible for safety valve relief. He does not appear to have more than one criminal history point. USSG § 5C1.2(a)(1); PSR ¶ 33. The offense did not result in death or serious bodily injury to anyone. § 5C1.2(a)(3). Finally, defendant has provided information to the government about his role in the offense. § 5C1.2(a)(5). However, defendant has not met the second or fourth element of the safety valve test, as set forth below. In light of that, the government submits that the statutory mandatory

1

minimum penalty of 120 months of imprisonment applies.  Considering the factors set forth in 18 U.S.C. § 3553(a), as discussed in the government's original sentencing papers, the government respectfully submits that defendant should be sentenced to the mandatory minimum, namely 120 months of imprisonment, followed by five years of supervised release.

### A. DEFENDANT WAS A "LEADER, ORGANIZER, MANAGER OR SUPERVISOR"

Despite his arguments to the contrary, the facts set forth in the PSR and in the government's sentencing papers establish that defendant does not qualify for the safety valve because he was a "leader, organizer, manager or supervisor" in the offense.  As the PSR noted, defendant "organized the narcotic transaction which included the act of directing co-defendant Velasquez on the quantity of methamphetamine he should bring to the meeting with the [informant]."  (PSR ¶ 23.)  In addition to the PSR recommendation, the evidence also showed that: (a) defendant claimed to deal methamphetamine in pound quantities (Defendant's Sentencing Exhibit A ("Exh. A") at 36); (b) he told the confidential informant to call him to arrange a purchase (id. at 37); (c) he claimed to work for a Mexican narcotics cartel (id. at 36); (d) on behalf of the cartel, defendant claimed to be in charge of all methamphetamine sales between Azusa and West Covina, California (id.); (e) he knew the source and purity of the narcotics (id. at 40-41); (f) he stated that the methamphetamine belonged to him (id. at 42); (g) he directed co-defendant Velasquez to deliver the methamphetamine (id.); (h) the confidential informant paid defendant (not Velasquez) for the methamphetamine (id.); (i) defendant distributed part of the payment to Velasquez and said he would pay the rest at a later time

(id.); and (j) he showed the confidential informant a hidden compartment in his vehicle which he told the confidential informant to use if the police arrived (id. at 43).

Defendant responds to these points, stating that because Velasquez delivered the methamphetamine, clearly it did not belong to defendant. (Defendant's Position "Def. Pos." at 11.) Defendant also argues that the method of payment indicates that he was only an intermediary, taking a share for arranging the transaction. (Id. at 12.) Finally, defendant says that his claims about connections to a cartel and control of the narcotics sales in a particular area of Los Angeles were merely boasts, designed to enhance his reputation. (Id. at 11.) Defendant's arguments are unavailing.

The Application Notes to Section 5C1.2 set forth the factors the Court should consider when deciding the issue of role (which are identified in Section 3B1.1):

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

USSG § 3B1.1 (emphasis added). It was defendant, not Velasquez, who organized this sale. He chose the time and place and provided the price to the informant. Defendant immediately took a cut of the sale (over 10% of the total sales price) and told the informant to keep some of the methamphetamine himself for testing purposes.

3

(Exh. A at 43.)  It was defendant, not Velasquez, who made the sale possible.

Defendant cites to United States v. Avila, 95 F.3d 887 (9th Cir. 1996), in support of the proposition that defendant was not a "leader or organizer." (Def. Pos. at 9.)  This case is not dispositive of the issue.  Primarily, Avila does not deal with the safety valve, but instead a challenge to a four-level aggravating role enhancement that the district court applied.  Id. at 889.  This is an important distinction because a defendant is not eligible for safety-valve relief is he is either a "leader or organizer" (which would generate the four-level enhancement under USSG § 3B1.1(a)) or if he was a "manager or supervisor" (which would generate a two-level enhancement under USSG § 3B1.1(c)).  USSG § 5C1.2(a)(4) ("defendant was not an organizer, leader, manager, or supervisor of others in the offense").  Thus, if the Court finds defendant not a "leader or organizer" but merely a "manager or supervisor," it should still deny safety valve relief.  As a result, while Avila may address in part the application of a four-level enhancement to a person who facilitates a narcotics deal, it does not set forth the conduct that would give rise to a two-level "manager or supervisor" role.  In fact, Avila specifically discusses this distinction:

> However appropriate it may be to find a person who has exercised no authority over others to warrant a two-level departure for being an organizer or leader or manager or supervisor, it is not appropriate in the context of four-level adjustments, where precisely what distinguishes a leader or an organizer from a manager or supervisor is control or authority over others.

Id. at 890, n.6 (internal citations omitted).  The Avila court seems to suggest that defendant's conduct here would give rise to the two-

4

level "manager or supervisor" enhancement, making him still not eligible for safety valve relief.[1]

The case defendant does not cite, but which is far more on point, is United States v. Varela, 993 F.2d 686 (9th Cir. 1993). There, the defendant, in separate transactions, facilitated the sale of firearms and drugs to the undercover officer. Like here, the defendant in Varela was charged with the firearms violations in one indictment and the narcotics violations in another. Defendant was convicted of all charges at trial. The district court followed the recommendation of the USPO, concluding that defendant should receive a two-level enhancement at sentencing based on his role as a manager or supervisor. Id. at 691. In the district court's words, defendant "puts together transactions with various of these suppliers with the undercover agent. In effect, he's acting as the wholesaler or at least the middleman between the supplier and the presumed wholesaler, the undercover agent." Id. The Ninth Circuit affirmed the application of the enhancement, finding that it "may be proper where, as here, a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants." Id. In the Court's words, defendant "organized *people*, not merely things." Id. at 692 (emphasis in original). See also United States v. Lopez-Salas, 254 Fed. Appx. 621, 623-24 (9th Cir. 2007) ("district court's application of the section 3B1.1(c) two-level adjustment is not clearly erroneous where a defendant tells others when to take

---

[1] Avila is also distinguishable because the defendant there did not negotiate the price of the drugs and was merely a relay for his source. Here, defendant procured the narcotics and told the informant how much they would cost.

5

certain actions, what to deliver, and where to deliver it."). Based on these cases, defendant here has certainly met the elements for the two-level enhancement as a "manager or supervisor" if not the four-level enhancement as a "leader or organizer." In either case, defendant is not eligible for the safety valve.

### B. DEFENDANT POSSESSED FIREARMS IN CONNECTION WITH THE OFFENSE

Defendant also fails to qualify for the safety valve because he possessed firearms in connection with the offense. See USSG § 5C1.2(a)(2). Defendant bears the burden of establishing by a preponderance of the evidence that he qualifies for this (and all other) elements of the safety valve. United States v. Zakharov, 468 F.3d 1171, 1181 (9th Cir. 2006). In this context, it means that "the burden is on the defendant to prove that it was 'clearly improbable' that he possessed a firearm in connection with the offense." United States v. Ferryman, 444 F.3d 1183 (9th Cir. 2006).

The evidence established that the confidential informant, who purchased the methamphetamine from defendant, met defendant as a result of his sale of 17 firearms to the informant in the months leading up to the methamphetamine sale. (Exh. A at 2, 21.) Defendant was the source of the firearms that his co-conspirators sold to the confidential informant. (Id. at 21-22.) Those firearms included AK-47 assault rifles. (Id. at 34.) During a meeting with the confidential informant, defendant possessed a firearm in his waistband. (Id.) Defendant told the confidential informant that defendant's "crew" took firearms to Mexico on a weekly basis. (Id. at 28.) During the negotiations for the purchase of the AK-47 firearms, defendant showed the confidential informant a secret

6

compartment in his vehicle, which defendant claimed was large enough to hold a firearm and five pounds of methamphetamine. (Id. at 32-33)  Two weeks later, defendant and the confidential informant began to negotiate the sale of methamphetamine. (Id. at 35.)  Defendant stated that he worked for a Mexican drug Cartel and had committed murders on behalf of the Cartel. (Id. at 36.)  Then, one week after the sale of the methamphetamine, defendant attempted to enlist the confidential informant in an operation to collect a $5,000,000 drug debt that was owed to defendant's Mexican cartel. (Id. at 44-45.) The operation would involve demanding the money from the drug courier, and if he did not pay, kidnapping the courier and holding him hostage until his family paid the debt. (GER 45-47.)  Finally, three weeks after the methamphetamine sale occurred, defendant's residence was searched and a loaded shotgun was found in the room that he occupied. (Government's Exhibit 1, attached hereto at 2.)

   Defendant's argument seems to be that because the firearms and drug sales did not occur on the same day, that the firearms possession is not "in connection" with the drug offense.  However, the evidence showed that defendant's firearm related conduct (including selling them, possessing them, and suggesting that he used them to commit murders and kidnappings) began before the drug sale and continued afterwards.  With respect to defendant's argument that the discussions of the Cartel-related violent conduct was merely "bragging," the evidence showed that defendant was able to obtain high-powered firearms and large quantities of narcotics on

7

short notice.² He is also from Michoacan, Mexico, a hot-bed of Cartel activity. (Exh. B. at 2.) As defendant bears the burden to establish that the firearms were not possessed in connection with the offense, his unsworn allegations that he was merely bragging do not make it "clearly improbable" that he possessed firearms in connection with the drug offense. See, e.g., United States v. Fernandez, 526 F.3d 1247 (9th Cir. 2008) (where defendant possessed multiple firearms in his residence, those firearms were possessed "in connection" with drug dealing offenses, even though drug deals did not occur out of the same residence); United States v. Nguyen, 303 Fed. Appx. 441, 444 (9th Cir. 2008) (affirming application of firearms enhancement even though defendant admitted to possessing firearm at different time period than drug sale, and holding that "district court does not need to find a connection between the firearm and the offense, only that the defendant possessed it during the commission of the offense."). Because defendant has not met his burden to prove that the firearms were not possessed in connection with his drug offense, he does not qualify for the safety valve.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court re-sentence defendant to a 120-month term of imprisonment, followed by five years of supervised release.

---

² Defendant also admitted to possessing two late-model sport utility vehicles, one of which had large rims and a Luis Vuitton leather interior. (Exh. 1 at 1, 6)